## SEEVERS v. DRENNON.

**Evidence :** SHERIFF'S FORECLOSURE : DEED. A deed made by a sheriff under a foreclosure proceeding, by notice and sale pursuant to chapter 118 of the code of 1851, is not of itself *prima facie* evidence of the regularity of such proceeding, nor of the truth of the recitals in such deed contained.

*Appeal from General Term, Sixth District (Mahaska County).*

MONDAY, JULY 25.

ACTION for the recovery of real property — the northeast quarter of south-west quarter, and the south-east quarter of north-west quarter, of section 35, township 77, range 16. The petition is in the ususal form, and plaintiff claims to be the absolute owner. Defendant denies plaintiff's right, asserts that he is the absolute owner, sets out his claim of title, and pleads the statute of limitations.

Trial to the court, and facts found as follows :

1. October 11, 1856, A. M. Cassiday was the owner of the real property in controversy, in fee simple, and on that day mortgaged it, with power of sale, under the statute, to Smith & Williams, to secure a note of $574.70, due in sixty days.

2. December 6, 1856, Cassiday again mortgaged the land to Ewing Turner, to secure a note for $1,427.53, due in one year.

3. March 28, 1857, Cassiday conveyed the land by warranty deed to Loughridge & Barber.

4. December 10, 1857, Smith & Williams assigned their note and mortgage to Turner.

5. May 26, 1858, William Edmonson, sheriff of Mahaska county, executed two deeds to Turner, purporting to convey the land to him by virtue of a foreclosure of

VOL. XXIX.—29

Seevers v. Drennon.

said mortgages, by notice and sale under chapter 118 of code of 1851. Said deeds recite that the note and mortgages (describing them) were placed by Turner in the sheriff's hands for foreclosure, December 25, 1857, to pay the balance due thereon ; that on said day notices of foreclosure of said mortgages came into his hands, directed to Cassiday and wife, and were served by him on them December 26th, 1857, by which they were notified that unless the balance due on said notes should be sooner paid, the sheriff would proceed to sell the property at public auction, at the court-house door, to the highest bidder for cash, between 9 A. M. and 4 P. M. on Saturday, January 30, 1858, and that the equity of redemption would be forever foreclosed ; that the notices were duly signed by the sheriff, the mortgagees and attorneys ; that on December 28, 1857, three copies of each of said notices were posted up in three public places in said county, one of which was the door of the court-house, etc. ; that the balance due on said notes not being paid, the mortgages were duly foreclosed on the 30th of January, 1858, in accordance with said notices, and said lands sold in parcels to Ewing Turner, the highest bidder, for the amount due.

These deeds were duly acknowledged and filed for record May 28, 1858. There were no affidavits of the service and publication of said notices recorded with said deeds, nor any evidence submitted that any such affidavits were ever made ; nor do said deeds show the manner of service, or that Loughridge & Barber were ever served with notice of said proceedings ; nor was there any evidence submitted that they had any knowledge thereof; nor was there any evidence that any notice of the pretended foreclosure and sale of said land was ever served upon said Cassiday or wife ; nor any evidence that said Cassiday ever knew of said sale or foreclosure proceedings ; nor

any evidence that any foreclosure or sale had ever been made or taken place, except the recitals in said deed.

6. August 30, 1864, Turner conveyed the land to Clark; October 10, 1864, Clark conveyed to Young; October 12, 1868, Young conveyed to defendant. All the before mentioned mortgages and deeds were duly recorded at about their respective dates.

7. Said Turner, who was, during all said time, a nonresident of the state, claimed to be the owner of said land, and paid taxes thereon from the time of his foreclosure to his sale to Clark; but the land has only been actually occupied by the defendant and his grantors about four years.

8. November 21, 1868, Cassiday and wife conveyed, by quitclaim deed, all their right, title and interest, etc., to plaintiff.

9. December 1, 1868, Loughridge & Barber conveyed, by quitclaim deed, to plaintiff. The consideration named in each quitclaim deed was one dollar; but the real object and consideration between plaintiff and his grantors was to make the land available on a $2,000 judgment which plaintiff held against said Cassiday.

Upon these facts, which are not controverted, the court found three conclusions of law, resulting in a finding and judgment for plaintiff. The defendant appealed to the general term, where the judgment was affirmed. He now appeals to this court.

*Z. T. Fisher* and *M. T. Williams* for the appellant.

*Seevers & Cutts* for the appellee.

COLE, Ch. J.—The entire facts are set forth in the foregoing statement of the case, and thereon arises substantially but one question to wit: Is the deed made by a sheriff, under a foreclosure proceeding, by notice and

sale pursuant to the provisions of chapter 118 of the code of 1851, *prima facie* evidence of the regularity of such proceedings, or of the truth of the recitals therein?

We have no hesitation whatever in holding that it is not. We ground our opinion upon the well-settled rule, that, aside from the statute, a sheriff's deed for real estate, sold under execution upon a judgment at law, is not *prima facie* evidence of the regularity of the prior proceedings, nor even of the existence of the judgment or the execution. Upon principle, the foreclosure of a mortgage by notice and sale, it being purely a highly summary proceeding, cannot stand upon any higher or better foundation than sales and conveyances under execution. And when we remember that the same legislature which enacted the statute for the summary proceeding of foreclosure by notice and sale, also enacted the statute regulating sales under execution by sheriffs, and under orders of sale by guardians, executors, etc., and that as to these latter it expressly enacted that the deeds of such should be *prima facie* evidence, etc., and failed to enact the same law in relation to deeds under notice and sale proceedings for foreclosure, the argument becomes quite conclusive.

But, further than this, the legislature did enact, in relation to foreclosure by notice and sale, that evidence of the service and publication of the notice, and of the sale made in accordance therewith, together with any postponement or other material matter, may be perpetuated by proper affidavits thereof. Such affidavits shall be attached to the bill of sale of personal property, or recorded with the deed of real property, and shall then be receivable in evidence to prove the facts they state. §§ 2079, 2080, Code of 1851. If the deed was to be evidence of the facts, why provide for other evi-

dence ?   Our conclusion seems inevitable, alike upon principle, analogy, and the construction of the statute.

Of course, the statute of limitations could not, under the facts found, constitute any bar.   The application for continuance was rightly overruled.   It failed to show any diligence, as well as to show that any advantage would come to defendant by further delay.

Affirmed.